**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DWAYNE GRAY MILLER, JR.**,

     Petitioner,

v.                                                  Civil Action No. **3:20CV760**

**KEVIN PUNTURI**,

     Respondent.

**MEMORANDUM OPINION**

Dwayne Gray Miller, Jr., a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 challenging his convictions in the Circuit Court of the County of Hanover ("Circuit Court") for aggravated involuntary manslaughter and hit–and–run, in which a death occurred.  ("§ 2254 Petition," ECF No. 1.)  Respondent moves to dismiss on the grounds that Miller's claims are procedurally defaulted or otherwise lack merit.  (ECF Nos. 17, 18.)  Miller has filed a response.  (ECF No. 22.)  For the reasons stated below, Respondent's Motion to Dismiss (ECF No. 17) will be GRANTED and Miller's § 2554 Petition (ECF No. 1) will be DENIED.  Miller's claims and this action will be DISMISSED.

**I.  PROCEDURAL HISTORY**

Following a three–day jury trial in the Circuit Court, Miller was convicted of aggravated involuntary manslaughter and felony hit–and–run.  *Commonwealth v. Miller*, No. CR14000634, at 2 (Va. Cir. Ct. Dec. 22, 2015).  Miller was sentenced to eleven (11) years of incarceration. *Commonwealth v. Miller,* No. CR14000634, at 1 (Va. Cir. Ct. Feb. 3, 2016).

Miller appealed his convictions to the Court of Appeals of Virginia.  (*See* ECF No. 18–1, at 1.)  Miller asserted that:

1) "the evidence was insufficient to establish that [Miller] caused the deceased's death;"

2) "the deceased's toxicology results should have been admitted into evidence;"

3) "the trial court erred when it instructed the jury that [Miller's] degree of intoxication was relevant to establish [Miller's] criminal negligence;" and,

4) "the trial court improperly instructed the jury when including in a jury instruction the language that a conviction 'does not require proof beyond all possible doubt.'"

(*Id*.)  The Court of Appeals of Virginia affirmed Miller's convictions.  (*Id.* at 13.)

Miller pursued his appeal further to the Supreme Court of Virginia.  Petition for Appeal, *Miller v. Commonwealth*, No. 171097 (Va. filed Aug. 17, 2017).  Miller raised the following two assignments of error:

Assignment of Error One:   "The trial court erred in denying the defense motion to strike the evidence because the Commonwealth's evidence was insufficient to establish the cause of the deceased's death, which is a necessary element to the charge of involuntary manslaughter.  The Court of Appeals erred in affirming the ruling of the trial court."  *Id*. at 1 (citation and footnote omitted).

Assignment of Error Two:   "The trial court erred in excluding defense toxicology evidence that the deceased had an illegal substance in his system at the time of his death, because such evidence was relevant to the issue of causation of death.  The Court of Appeals erred in finding that any error with respect to this issue was harmless error."  *Id.* (citation omitted).

The Supreme Court of Virginia refused Miller's petition for appeal.  *Miller v. Commonwealth*, No. 171097, at 1 (Va. June 14, 2018).

Miller next filed a petition for a writ of habeas corpus with the Circuit Court. Petition for Writ of Habeas Corpus, *Miller v. Ratliffe–Walker*, No. CL19000028–00 (Va. Cir. Ct. filed Jan. 10, 2019). In his state habeas petition, Miller raised the following claims for relief:[1]

Claim One:         "Counsel failed to inform and provide Mr. Miller with the correct sentencing guidelines." *Id.* at 8.

Claim Two:         "Counsel failed to review and investigate the Hanover County 911 incident report." *Id.* at 11.

Claim Three:       "Counsel failed to consult or produce a forensic expert on blood splatter and patterns." *Id.* at 13.

Claim Four:        "Counsel failed to question Dr. Deborah Kay, who performed the autopsy on Jason Ellis Bailey." *Id.* at 14.

Claim Five:        "Counsel failed to call expert toxicologist Richard McGarry, who specializes in drug effects . . . [regarding] the victim's recent use of marijuana." *Id.* at 15.

Claim Six:         "Counsel failed to object to the admission of Mr. Miller's toxicology results at trial, as the analyst, Joan Morris, who received and analyzed Mr. Miller's blood samples was not present to testify after being summoned by the Commonwealth." *Id.* at 16.

Claim Seven:       "Counsel failed to object to the reconstruction testimony of the C[rash] D[ata] R[etrieval] report." *Id.* at 18.

Claim Nine:[2]     "Counsel failed to consult and introduce medical expert testimony as to the effects and signs of trauma [that] an individual suffering from a concussion [might display] as mitigating evidence." *Id.* at 19.

Claim Ten:         "Counsel failed to object to the prosecutor's highly prejudicial comments and statements during closing arguments and the sentencing phase." *Id.* at 20.

---

[1]   The Court corrects for spelling, capitalization, and punctuation in quotations from the parties' submissions. The Court utilizes the pagination assigned by the Circuit Court to the habeas record.

[2]   Miller did not include an enumerated "Claim Eight" in his state habeas petition.

Claim Eleven:         "[The] trial court committed reversible error and prejudiced Mr. Miller by striking juror Barbara Jellison for cause." *Id.* at 22.

Claim Twelve:         "The jury sentenced Mr. Miller excessively based upon similar cases in Hanover County and surrounding jurisdictions." *Id.*

Claim Thirteen:       "The trial court erred in denying the defense motion to strike the evidence because the Commonwealth's evidence was insufficient to establish the cause of the accident and the deceased's death, which is a necessary element to the charge of involuntary manslaughter." *Id.* at 23.

Claim Fourteen:       "The trial court erred in excluding defense toxicology evidence that the deceased had marijuana, which is an illegal substance, in his system and in his possession at the time of his death, because such evidence was relevant to the cause of the accident and the cause of death." *Id.* at 24.

The Circuit Court denied Miller's state habeas petition. *Miller v. Ratliffe–Walker*, No. CL19000028–00, at 495 (Va. Cir. Sept. 9, 2019).

Miller then filed in the Supreme Court of Virginia a copy of the same state habeas petition form that he had previously filed with the Circuit Court, which the Supreme Court of Virginia construed and docketed as a petition for appeal. Petition for Appeal, *Miller v. Ratliffe–Walker*, No. 200056 (Va. filed Oct. 17, 2019). The Supreme Court of Virginia dismissed Miller's petition for appeal on procedural grounds. *Miller v. Ratliffe–Walker*, No. 200056, at 1 (Va. June 9, 2020.) Specifically, the Supreme Court of Virginia said:

> Upon consideration of the record and the pleadings filed in this case, the Court finds that the assignments of error in the petition for appeal are insufficient as they do not address any finding or ruling of the circuit court or any failure of the circuit court to rule on an issue in *Dwayne Gray Miller, Jr., No. 1328918 v. Dana Ratliffe–Walker, Warden*, Circuit Case No. CL19000028–00, from which an appeal is sought. Accordingly, the petition for appeal is dismissed. Rule 5:17(c)(1)(iii).

*Id.*

Miller subsequently filed the § 2254 Petition that is now before the Court.  (ECF No. 1.)

Presently, Miller raises the following claims for relief:[3]

Claim One:  "Counsel failed to inform and provide Mr. Miller with the correct sentencing guidelines." (ECF No. 1–1, at 1.)

Claim Two:  "Counsel failed to review and investigate the Hanover County 911 incident report." (*Id.* at 4.)

Claim Three:  "Counsel failed to consult or produce a forensic expert on blood splatter and patterns." (*Id.* at 6.)

Claim Four:  "Counsel failed to question Dr. Deborah Kay, who performed the autopsy on Jason Ellis Bailey." (*Id.* at 7.)

Claim Five:  "Counsel failed to call expert toxicologist Richard McGarry, who specializes in drug effects . . . [regarding] the victim's recent use of marijuana." (*Id.* at 8.)

Claim Six:  "Counsel failed to object to the admission of Mr. Miller's toxicology results at trial, as the analyst, Joan Morris, who received and analyzed Mr. Miller's blood samples was not present to testify after being summoned by the Commonwealth." (*Id.* at 9.)

Claim Seven:  "Counsel failed to object to the reconstruction testimony of the C[rash] D[ata] R[etrieval] report." (*Id.* at 11.)

Claim Eight:  "Counsel failed to object to the prosecutor's highly prejudicial comments and statements during closing arguments and the sentencing phase." (*Id.* at 12.)

Claim Nine:  "Counsel failed to consult and introduce medical testimony as to the effects and signs of trauma [that] an individual suffering from a concussion [might display] as mitigating evidence." (*Id.* at 14.)

Claim Ten:  "[The] trial court committed reversible error and prejudiced Mr. Miller by striking juror Barbara Jellison for cause." (*Id.* at 15.)

---

[3]    The Court employs the pagination assigned by the CM/ECF docketing system.  The Court notes that while the substance of Miller's current claims is substantially similar to the claims he raised in the Circuit Court, some of the numbers that Miller assigns to his claims are different, presumably due to the fact that Miller did not include a "Claim Eight" in his state habeas petition.

Claim Eleven:          "The jury sentenced Mr. Miller excessively based upon similar cases in Hanover County and surrounding jurisdictions." (*Id.* at 15.)

Claim Twelve:          "The trial court erred in denying the defense motion to strike the evidence because the Commonwealth's evidence was insufficient to establish the cause of the accident and the deceased's death, which is a necessary element to the charge of involuntary manslaughter." (*Id.* at 16.)

Claim Thirteen:        "The trial court erred in excluding defense toxicology evidence that the deceased had marijuana, which is an illegal substance, in his system and in his possession at the time of his death, because such evidence was relevant to the cause of the accident and the cause of death." (*Id.* at 17.)

As discussed below, Claims One through Eleven are procedurally defaulted because Miller failed to properly present those claims to the Supreme Court of Virginia in his habeas appeal. Claim Twelve fails to state a viable basis for § 2254 relief and Claim Thirteen is not cognizable in the context of a § 2254 proceeding.

## II. PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 492 n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526

U.S. 838, 844–48 (1999).  As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)).  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Id.*  Fair presentation demands that a petitioner present "both the operative facts and the controlling legal principles" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)).  The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner.  *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default."  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim."  *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)).  The burden of pleading and proving that a claim is procedurally defaulted rests with the state.  *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted).  Absent a showing of "cause for the default and actual

prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

Respondent concedes that Miller exhausted his state court remedies with regard to Claims Twelve and Thirteen by presenting those claims to the Supreme Court of Virginia on direct appeal. (ECF No. 18, at 3.)  However, Respondent argues that Claims One through Eleven were never properly presented to the Supreme Court of Virginia and are now defaulted.  (*Id*. at 3–6.) Respondent points out that the Supreme Court of Virginia dismissed Miller's habeas appeal for failing to include appropriate assignments of error, as required by Rule 5:17(c)(1)(iii).[4]  (*Id*. at 4.)

Rule 5:17(c) constitutes an adequate and independent basis for denying a claim.  *See Hendrick v. True*, 443 F.3d 342, 360 (4th Cir. 2006); *Yeatts v. Angelone*, 166 F.3d 255, 264 (4th

---

[4]     Virginia Supreme Court Rule 5:17(c) provides, in relevant part:

**(c) What the Petition Must Contain.** A petition for appeal must contain the following:
(1) *Assignments of Error.* Under a heading entitled "Assignment of Error," the petition shall list, clearly and concisely and without extraneous argument, the specific errors in the rulings below upon which the party intends to rely, or the specific existing case law that should be overturned, extended, modified, or reversed. An exact reference to the page(s) of the transcript, written statement of facts, or record where the alleged error has been preserved in the trial court or other tribunal from which the appeal is taken shall be included with each assignment of error.
   (i) Effect of Failure to Assign Error. Only assignments of errors assigned in the petition for appeal will be noticed by this Court. If the petition for appeal does not contain assignments of error, the petition shall be dismissed.
   . . . .
   (iii) Insufficient Assignments of Error. An assignment of error that does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient. . . .  If the assignments of error are insufficient, the petition for appeal shall be dismissed.

Va. Sup. Ct. R. 5:17(c) (2017).

Cir. 1999); *see also Lowe v. Commonwealth*, No. 3:17CV292, 2018 WL 507076, at *3–4 (E.D. Va. Jan. 22, 2018) (finding claims to be procedurally barred under Rule 5:17(c)(1)(iii) where petitioner "simply repeated his claims" to the Virginia Supreme Court without identifying any specific error in the circuit court's denial of his habeas petition).  Consequently, Claims One through Eleven are defaulted and will be barred from review here, unless Miller can demonstrate that either cause and prejudice exist, or that a "fundamental miscarriage of justice" would occur. *See Coleman*, 501 U.S. at 750.

Miller has failed to address the Supreme Court of Virginia's dismissal of his state habeas claims pursuant to Rule 5:17(c), much less explained why he failed to include appropriate assignments of error when he appealed the denial of his state habeas petition.  More importantly, Miller does not allege that cause exists to excuse his default, that he has suffered any actual prejudice as a result, or that a "fundamental miscarriage of justice" would occur if this Court did not consider his defaulted claims.  Accordingly, Claims One through Eleven will be DISMISSED as procedurally defaulted.

### III.  APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence."  *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).  Additionally, under 28 U.S.C. § 2254(d), a federal court may not

grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).[5]

## IV. SUFFICIENCY OF THE EVIDENCE

In Claim Twelve, Miller asserts that the "trial court erred in denying the defense motion to strike the evidence because the Commonwealth's evidence was insufficient to establish the cause of the accident and the deceased's death, which is a necessary element to the charge of involuntary manslaughter." (ECF No. 1–1, at 16.)   Respondent argues that "Miller's crime clearly caused the victim's death," and thus the evidence was sufficient to support his conviction. (ECF No. 18, at 14-16.)

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).   The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational

---

[5]      The Court looks to the last reasoned state court opinion to resolve Claims Twelve and Thirteen. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").   In this instance, the last reasoned state court opinion was issued by the Court of Appeals of Virginia.   (*See* ECF No. 18–1, at 1–13.)

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).  The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

In rejecting Miller's challenge to the sufficiency of the evidence on direct appeal, the Court of Appeals of Virginia aptly summarized the evidence of Miller's guilt and the relevant law as follows:

> On the evening of May 1, 2014, the deceased, Jason Bailey ("Bailey"), responded to a request for a tow truck on Interstate 295 in Hanover County, where he was then struck and killed.  Bailey was a tow truck driver whose company had been called by Avonia Gregory ("Gregory"), a motorist with a flat tire.  She testified that Bailey parked his truck "perfectly straight" on the shoulder, and the truck's lights were "flashing."  Pictures taken at the scene and admitted into evidence show the upper bar light of the truck flashing.  Gregory testified that Bailey was "polite, professional, concerned and appeared to know what he was doing."  Gregory then got a ride to the car dealership and left Bailey with her car to follow behind with the tow truck.
>
> Another witness, Ein Conrad ("Conrad"), testified that he was traveling on I–295 and "[i]t was getting pretty dark."  Conrad noticed the driver of a Ford Explorer, later identified as appellant, driving "erratically . . . speeding and swerving in and out of traffic."  Conrad was driving next to and behind appellant's vehicle, which was in the far right lane, closest to the right shoulder.  Conrad could see Bailey's tow truck stopped on the shoulder with "the bar light on top of the flatbed" flashing, and knew "something had happened" when he saw that the "taillights of [appellant's Explorer] were swerving . . . in front of the tow truck."  Kyreena Cromleigh ("Cromleigh"), Conrad's fiancée and passenger, said that she knew right away that someone had been hurt because "there was blood everywhere."  Conrad pulled his car over off the road and stopped.  As Conrad approached the tow truck, he saw Bailey's body lying beside it.  He testified that he did not bother checking for a pulse, because Bailey "wouldn't have survived that."
>
> Cromleigh testified that when they pulled over, she observed an SUV crashed beyond the tow truck and she saw a man stumble out of the SUV and walk unsteadily away from his SUV.  Residents from the neighborhood adjacent to the crash scene testified to seeing appellant walking in the neighborhood and in residents' yards shortly after hearing the crash.  Stacy Dixon ("Dixon"), a neighborhood resident, testified that she was outside her house when she heard a man scream, "Hey!"—and then heard a loud crash.  She described the crash as "the loudest sound that I have heard."  Some time later, when she was inside her home

11

again, she turned on some outside lights to illuminate her backyard deck. Upon turning on the lights, she observed a man sitting on her back deck. The man had blood on him and was sitting there staring at the sky. At trial, Dixon identified the man in her backyard as appellant.

The police encountered appellant in the adjacent neighborhood and transported him back to the scene of the accident. They described him as bruised, bloodied, and displaying delayed movements and speech. When asked by police, appellant said that he had consumed "a lot" of alcohol and that he was driving "45 degrees" at the time of the collision. At trial, Dr. James Hutchings, a forensic toxicologist, testified that, given that Miller's blood alcohol content ("BAC") was 0.181 more than three–and–a–half hours after the collision, "[i]t most likely would have been higher" at the time of impact. He stated, "Commonly, you remove 0.01 to 0.02 percent per weight per volume per hour." When asked about the effects on a person's cognition at a BAC of 0.181, Dr. Hutchings replied, "[T]here would be severe disorientation, slurred speech. I would expect there to be some large gross motor function, inability to control your legs, loss of balance. I would also expect there to be severely slowed psychomotor function. Expect the ability to react to the outside world would be severely slowed. There would also be some severe visual acuity issues." Dr. Hutchings also testified that if someone were driving with a BAC of 0.181 and he *was* able to perceive an object in his path, he "would not be able to react in time to avoid" striking it. Dr. Hutchings also opined that a driver with such an elevated BAC could lose consciousness and may not "even be able to perceive or react at all."

The medical examiner, Dr. Deborah Kay, who performed the autopsy of Bailey testified to his various injuries, and concluded that the cause of death was "[b]lunt force injuries to the head, neck and torso." Upon cross-examination, Dr. Kay testified that any one of the injuries or any combination of the injuries could have caused Bailey's death—and that there was no way to determine how many times he was struck.

Blood taken from appellant's vehicle was matched to the deceased. The pictures of appellant's Ford Explorer depict blood spatter and fragments on the SUV, as well as significant damage and some blood spatter on the front passenger side (where the Explorer would have initially impacted Bailey and his tow truck). The pictures also show fragments from the red tow truck embedded in the side of the silver Ford Explorer. The record does not reveal evidence that any other car collided with the tow truck. At trial, Sergeant Anthony J. Puckett of the Virginia State Police testified in his capacity as a member of the Virginia Crash Reconstruction Team, a special team within the State Police. Sergeant Puckett had special training in interpreting crash data from vehicles. Sergeant Puckett testified that appellant's vehicle had an "event data recorder" which recorded the vehicle's response to its crash. According to the event data recorder, appellant was not wearing a seatbelt at the time of the crash. Puckett concluded that appellant did not try to slow down or steer away from the crash before impact.

. . . .

Appellant argues that the Commonwealth failed to prove that appellant proximately caused Bailey's death.

When considering the sufficiency of the evidence presented below, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Crowder v. Commonwealth*, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," *Riner v. Commonwealth*, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *Crowder*, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc* )). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

"A proximate cause is 'an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred.'" *Rich v. Commonwealth*, 292 Va. 791, 800, 793 S.E.2d 798, 803 (2016) (quoting *Brown v. Commonwealth*, 278 Va. 523, 529, 685 S.E.2d 43, 46 (2009)).

Dixon testified that on the evening of May 1, 2014, she was outside her house when she heard a man scream, "Hey!" and she then heard a loud crash. Eyewitnesses who were also traveling on the road with appellant's vehicle testified "that there was blood everywhere" after they observed a collision between the tow truck and the SUV. Forensic evidence shows that the SUV hit the tow truck. Bailey's body was found partially in the road, lying beside the tow truck. Forensic evidence also shows Bailey's blood on the side of the SUV—the same side that collided with the tow truck.

We disagree with appellant's assertion that, under the facts of this case, the Commonwealth's evidence only amounted to conjecture as to how the accident occurred and that it is unclear whether appellant actually caused Bailey's death. "We have repeatedly held that the factfinder may draw reasonable inferences from proven facts." *Id.* "[I]n a circumstantial evidence case, such as the case currently before us, the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt . . . ." *Ervin v. Commonwealth*, 57 Va. App. 495, 505, 704 S.E.2d 135, 140 (2011) (*en banc* ). A reasonable factfinder could have inferred from the evidence presented at trial that appellant was a direct and proximate cause of Bailey's death because appellant's SUV not only collided with Bailey's tow truck but appellant also drove his SUV into Bailey–who was standing by the truck–with enough force to kill him.

However, it is immaterial whether appellant's car fatally struck Bailey–or whether a subsequent car running over Bailey once he was in the road caused the fatal injury. The Commonwealth was only required to prove that appellant's vehicle was a *proximate* cause of Bailey's death. "[A]n intervening event, even if a cause of the harm, does not operate to exempt a defendant" from criminal liability if the intervening event was put into operation by the defendant's criminally negligent acts. *Noakes v. Commonwealth*, 280 Va. 338, 349, 699 S.E.2d 284, 290

13

(2010) (quoting *Gallimore v. Commonwealth*, 246 Va. 441, 447, 436 S.E.2d 421, 425 (1993)).

> Therefore, we hold that a rational trier of fact could have concluded that appellant proximately caused Bailey's death.

(ECF No. 18–1, at 1–8 (all alterations and omissions, except for the third omission, in the original).)

The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the state court's analysis.  *See* 28 U.S.C. § 2254(d)(1)–(2).  Rather, the evidence, as described by the Court of Appeals of Virginia, amply supports Miller's conviction for aggravated involuntary manslaughter.  Accordingly, Claim Twelve will be DISMISSED.

## V.  CLAIM NOT COGNIZABLE IN FEDERAL HABEAS REVIEW

In Claim Thirteen, Miller posits that "[t]he trial court erred in excluding defense toxicology evidence that [Bailey] had marijuana, which is an illegal substance, in his system and in his possession at the time of his death."  (ECF No. 1–1, at 17.)  Respondent argues this evidentiary issue "is a clear matter of state law which this Court cannot review."  (ECF No. 18, at 18.)  A review of Miller's § 2254 Petition and the record indicates that Respondent is correct; Miller has failed to raise a question of federal law that is cognizable on habeas review.

In rejecting Miller's argument on direct appeal, the Court of Appeals of Virginia stated:

> Appellant argues that the trial court erred when it refused to admit Bailey's toxicology results into evidence because, as appellant contends, Bailey's potential impairment was relevant to the issue of causation.  Even assuming without deciding that the trial court's ruling was erroneous, we conclude that such error was nevertheless harmless.
> As this case does not involve an alleged constitutional error, we apply the statutory standard provided by Code § 8.01–678 to determine whether the non–constitutional error was harmless.  Code § 8.01–678 provides, in pertinent part:
>> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

"Under this standard, a non–constitutional error in a criminal case is harmless '[i]f, when all is said and done, . . . the error did not influence the jury, or had but slight effect.'" *Anderson v. Commonwealth*, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011) (quoting *Rose v. Commonwealth*, 270 Va. 3, 12, 613 S.E.2d 454, 458 (2005)).  As the Supreme Court has stated in *Clay v. Commonwealth*, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001), "In a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the [fact finder].  If it did not, the error is harmless."

When we look at the trial as a whole, we conclude that the toxicology report could not have substantially influenced the jury.  Appellant proffered evidence that Bailey had THC in his blood at his time of death and that marijuana was located in the tow truck.  Appellant proffered no additional evidence to show that Bailey was impaired at the time of the accident.  The expert witness specifically testified that he could not infer impairment from the level of THC in Bailey's blood or that the marijuana had even been ingested within the preceding three or four hours before Bailey's death.  At trial, there was a great deal of evidence to show that Bailey was acting cautiously and was not impaired.  Viewing the evidence in the light most favorable to the Commonwealth, as the party that prevailed below, the evidence showed that Bailey parked his tow truck on the side of the road, he turned on the tow truck's hazard lights, and he wore a safety vest while handling Avonia Gregory's car.  Moreover, Ms. Gregory testified that Bailey was "polite, professional, concerned and appeared to know what he was doing."

Even if the trial court had allowed the toxicology findings and the testimony that marijuana was found in the tow truck into evidence, the expert specifically testified that he *could not* opine, based on .0046 milligrams per liter of THC in Bailey's system, that Bailey was under the influence of marijuana at the time he died.[6]  Thus, even if the trial court erred in excluding the toxicology report, such error was harmless because the ultimate medical opinion which appellant sought to place before the jury–that Bailey was impaired–would have had to have been rejected.  Thus, the evidence that appellant put forward regarding whether Bailey might have been under the influence of marijuana could not have had more than "slight effect" because appellant's proffered evidence simply does not show impairment.  Therefore, we conclude that appellant had a "fair trial on the merits" and that the error, if any, was harmless.

(ECF No. 18–1, at 8–10 (all alterations and omissions in the original, except footnote numbering altered).)

---

[6]     In fact, not only did the expert indicate it was unclear whether Bailey was under the influence of marijuana, but the evidence showed that Bailey probably had not ingested marijuana for at least three or four hours before his death.  Dr. Hutchings testified that "anything below [.005 milligrams per liter] is more indicative of less recent use, probably greater than three or four hours from the time of use."

On its face, the state court's analysis does not appear to involve an unreasonable application of the law or unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Regardless, the Court need not inquire further into the propriety of the state court's analysis, as Miller has failed to demonstrate that this evidentiary ruling implicates a question of federal law that is cognizable on habeas review.

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Matters of State law not involving federal constitutional issues," however, "are not appropriate grounds for federal habeas corpus relief." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (citing *Chance v. Garrison*, 537 F.2d 1212 (4th Cir. 1976)). The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)).

In Claim Thirteen, Miller asks this Court to review and second–guess the trial court's application of the Virginia Rules of Evidence, which is inherently a state–law issue. The Constitution "does not permit the federal courts to engage in finely–tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983). Simply put, "it is not the province of a federal habeas court to reexamine state–court determinations on state–law questions." *Estelle*, 502 U.S. at 67–68.

Miller does not allege a specific "violation of the Constitution or the laws or treaties of the United States," in Claim Thirteen, nor can the Court discern any such violation from the record before it. Accordingly, Claim Thirteen will be DISMISSED for failure to state a claim cognizable on federal habeas corpus review.

16

## VI.  CONCLUSION

For the reasons stated above, Respondent's Motion to Dismiss (ECF No. 17) and Motion to Substitute Counsel (ECF No. 24) will be GRANTED, the § 2254 Petition (ECF No. 1) will be DENIED, Miller's claims will be DISMISSED, and the action be DISMISSED.  A certificate of appealability will be DENIED.[7]

An appropriate Order shall issue.

_____
/S/
Elizabeth W. Hanes
United States Magistrate Judge

Date: September 24, 2021
Richmond, Virginia

---

[7]     An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).  Miller fails to meet this standard.